IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of AMES CONSTRUCTION INC., and AMES CONSTRUCTION INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>Defendant. | CASE NO.: _____<br><br>MILLER ACT COMPLAINT |

## COMPLAINT

Plaintiffs, the United States of America for the use and benefit of Ames Construction Inc. and Ames Construction Inc., by and through undersigned counsel, submit this Complaint against Defendant, National Union Fire Insurance Company of Pittsburgh, PA, and allege as follows:

## I.
## PARTIES AND NATURE OF THE ACTION

1. This is an action brought by Plaintiff, Ames Construction Inc. ("Ames"), asserting a payment bond claim under 40 U.S.C. §§ 3131 *et seq.* (the "Miller Act") against Defendant, National Union Fire Insurance Company of Pittsburgh, PA ("National").

2. Plaintiff Ames is a Minnesota corporation with its principal place of business in Burnsville, Minnesota, which does business in Wyoming.

3. Upon information and belief, Defendant National is a Pennsylvania company with its principal place of business in New York, New York, which does business in Wyoming.

4. The United States of America is a nominal party plaintiff for the use of Ames under 40 U.S.C. § 3133(b)(3)(A).

5. Ames' claims all arise in connection with the construction of the Francis E. Warren Air Force Base ("Warren AFB") Weapon Storage and Maintenance Facility project (the "Project") located approximately 3 miles (4.8 km) west of Cheyenne, Wyoming.

6. Ames seeks to recover damages from National under the Miller Act because Ames has not been paid in full for labor performed and material supplied on the Project.

7. The amount unpaid and for which the claim is made under the Miller Act, and in particular, 40 U.S.C. § 3133(b)(1), is in excess of ***Two Million Seventy-Three Thousand Two Hundred Two Dollars and Eighty-One Cents*** (**$2,073,202.81**).

## II.
## JURISDICTION AND VENUE

8. This Court has original jurisdiction over this action under 40 U.S.C. §§ 3131-3134 and 28 U.S.C. § 1331 since the claims asserted herein arose on a federal enclave.

9. This Court has personal jurisdiction over National under 40 U.S.C. §§ 3131-3134 and 28 U.S.C. § 1331 since the claims asserted herein arose on a federal enclave, this suit arises out of or relates to National's contacts with Wyoming, and Ames' claims are related to the business National does in Wyoming.

10. Venue is proper in this District under 40 U.S.C. §§ 3131-3134 and 28 U.S.C. § 1331 since the claims asserted herein arose on a federal enclave.

## III.
## FACTUAL ALLEGATIONS

11. Ames is a heavy civil and industrial general contractor that operates throughout North America.

12. The instant action stems from a subcontract agreement between Ames and Fluor Federal Solutions, LLC ("Fluor"), dated on or about June 19, 2019, with an effective date of May

17, 2019 (the "Subcontract"), relating to the construction of the Project. A true and correct copy of the Subcontract in Ames' possession is attached as **Exhibit A**.

### A.     *Project Background*

13.     The Project, which has been designated as a "design-bid-build" project[1], is a highly specialized, reinforced concrete facility being built for the United States Air Force (the "USAF").

14.     Consistent with a typical "design-bid-build" procurement model, upon information and belief, the United States Army Corps of Engineers (the "USACE"), acting as "owner" of the Project, retained Black & Veatch to provide professional services as the designer of record for the Project (the "DOR").

15.     Upon information and belief, Black & Veatch is as an engineering, procurement, consulting, and construction company that provides services to clients around the world. *See* https://www.bv.com/company/about-us/.

16.     The USACE also entered into an agreement with Fluor, Contract No. W9128F-19-C-0005, dated December 7, 2018 (the "Prime Contract"), pursuant to which, upon information and belief, Fluor agreed to provide services as a general contractor for the construction of the Project.

17.     Upon information and belief, the USACE issued the notice to proceed on or about February 6, 2019 (the "NTP"), thereby making June 4, 2022, the original contract completion date.

18.     Fluor furnished a payment bond, Bond No. 923637, dated December 10, 2018, with Fluor, as principal, and National, as surety, in the penal sum of *One Hundred Forty-Five Million Seven Hundred Twenty Thousand Eight Hundred Forty Dollars and Two Cents* ($145,720,840.02) (the "Payment Bond"). A true and correct copy of the Payment Bond is attached as **Exhibit B**.

---

[1] Traditionally, designation of a project as "design-bid-build" means that the owner contracts with an engineer, known as the designer of record, to fully design the project and separately contracts with a construction contractor to construct the project.

19. Pursuant to its terms, the Payment Bond guarantees full payment to persons or entities that supplied labor and/or materials in connection with the Project.

20. Pursuant to the Subcontract, Ames agreed to provide certain site clearing, grading, aggregate, and cast-in-place concrete work for the Project (the "Work") in exchange for payment from Fluor.

21. Under the terms of the Subcontract, Ames was to commence its Work on or about May 17, 2019, and complete its Work no later than December 31, 2022.

22. Based upon the known Project schedule at the time the Subcontract was executed, Ames' Work had a planned contractual duration of 1,324 calendar days ("CD"), or approximately 44 months.

23. The Subcontract specifically contemplates changes in Ames' scope of work by, "addition, deletions or revisions," during the course of the Project, and states that Ames will be notified of any such changes by, "receipt of additional and/or revised drawings, specifications, exhibits or other written notification." *See* Ex. A, pt. III, § 15.1.

24. Ames is entitled to additional compensation and/or a change to the Project schedule, as applicable, in connection with change orders. *Id*. at §§ 15.2-15.7.

**B.    *Unforeseeable Changes to the Project's Air Distribution System's Materials Directly and Adversely Impacted the Cost and Schedule of Ames' Work***

25. Once Ames began its Work, it encountered unforeseeable and unanticipated delays and disruptions, due to no fault of its own, that adversely affected the duration of Ames' Work and Ames' cost to complete its Work.

   i. <u>Fluor Agreed to Changes to the Work Without Notice, Impact, or Compensation to Ames</u>

26. Among those delays and disruptions to the performance of Ames' Work was the USACE decision to change the materials stated in the Subcontract for the Project's Air Distribution

System (the "ADS"), including, in particular, the materials for the section of the ADS that runs through Room 140.

27. Upon information and belief, the USACE first notified Fluor of its intent to modify the ADS materials on or about October 13, 2020 (over 16 months after the commencement of Ames' Work), when—*unbeknownst to Ames*—the USACE furnished Serial Letter No. C-0157 to Fluor requesting that Fluor provide a proposal for the USACE revised request for proposal ("RFP") for Modification R00014, "Air Distribution System Material Changes" ("RFP R00014"). A true and correct copy of RFP R00014 is attached as **Exhibit C**.

28. According to the requirements of RFP R00014, Fluor's revised RFP was to be submitted "no later than October 20, 2020," and was to include a cost proposal and Time Impact Analysis ("TIA") for "all work involved in the scope[.]" *Id*. pg. 1.

29. RFP R00014 further provided that Fluor's subcontractors, "must provide [a] similar price breakdown to support any amounts claimed for subcontracts." *Id.*

30. Despite the clear requirements of RFP R00014, as well as the fact that RFP R00014 directly impacted Ames' Work in Room 140, Fluor neglected to notify Ames of its receipt of RFP R00014, and never requested that Ames submit any type of proposal relating to RFP R00014.

31. Consequently, *without the knowledge or input of Ames*, Fluor furnished the USACE with Serial Letter H-0199, dated February 26, 2021, containing Fluor's revised proposal in response to RFP R00014 ("Proposal R00014"). A true and correct copy of Proposal R00014 is attached as **Exhibit D**. Proposal R00014 failed to include or otherwise account for any time or schedule impacts to Ames' Work.

32. On or about March 5, 2021, the USACE provided Fluor with Serial Letter No. C-0175, which incorporated by reference and attachment a proposed contract modification,

Modification No. P00011, instructing Fluor to proceed with performing the work described in Proposal R00014 without any adjustment to the price or schedule of Ames' Work (Serial Letter No. C-0175 and Modification No. P00011 are referred to, *collectively*, as the "ADS Materials Change Directive"). A true and correct copy of the ADS Materials Change Directive is attached as **Exhibit E**.

33. The ADS Materials Change Directive does not provide for either additional cost or schedule modification of any sort, stating only that Fluor's performance of the change work "was not to exceed the price established $0.00." *Id*. pg. 1. In the event Fluor determined that the scope of work warranted a revised proposal, then Fluor was required to submit another revised proposal "no later than 25 March 2021." *Id.*

34. Upon information and belief, after the ADS Materials Change Directive was issued, Fluor supplemented Proposal R00014 by providing the USACE with another revised proposal relating to RFP R00014 ("Proposal R10014"). Proposal R10014 was again submitted without Ames' input or consultation and again lacked any price increase or schedule extension for Ames.

35. Thereafter, the USACE and Fluor memorialized their purported "final" agreement relating to RFP R00014 by executing a contract modification, Modification No. P00015, dated November 15, 2021 ("Modification P00015"). A true and correct copy of Modification P00015 is attached as **Exhibit F**.

36. Modification P00015 formally incorporated Proposals R00014 and R10014 into the Prime Contract and contains no increase in price or time extension for Ames despite the fact that Modification P00015 directly impacted Ames' Work. *Id*. pg. 2.

37. Fluor failed and neglected to notify Ames of the material design changes to the ADS, as outlined in RFP R00014, until well after the issuance of Modification P00015.

38. In fact, Fluor did not notify Ames of the USACE-initiated material changes for the ADS until December of 2021, when Fluor finally notified Ames during a schedule coordination meeting that Ames' planned construction sequence for Room 140 would have to be modified to accommodate Modification P00015.

    ii. *Fluor Directed Ames to Work Out of the Planned Sequence of Work*

39. In connection with Modification P00015, throughout the month of December 2021, Fluor, Ames, and other Project subcontractors attended multiple coordination meetings in order to discuss efforts to accommodate Modification P00015 and, during these meetings, Fluor notified Ames that Fluor's mechanical subcontractor would need a previously undisclosed and unscheduled 6 months to weld the mechanical piping related to the ADS material change, which 6-month period was to begin after Ames removed its shoring from the Project's Area "C" Maintenance Bays and end before Ames constructed the Room 140 roof. This unforeseeable and uncontemplated change directly and negatively impacted Ames' cost and schedule for the performance of its Work.

40. From the inception of the Project, and prior to the ADS material change, the critical path for the Project, as shown on both Fluor's and Ames' Project schedules, passed through Room 140. A true and correct excerpt of Fluor's project schedule from April 2020 and a true and correct excerpt of Fluor's project schedule from December 2021, both of which show the Room 140 walls and roof slab as critical path, is attached as **Composite Exhibit G**, and a true and correct excerpt of Ames' project schedule from July 2019 and a true and correct excerpt of Ames' project schedule from November 2021, both of which show the Room 140 walls and roof slab as critical path, is attached as **Composite Exhibit H**.

41. As a direct result of Modification P00015, Ames was constrained to incur additional and unforeseeable extended time-related overhead and indirect costs.

42. Prior to Modification P00015, installation of the mechanical piping in Room 140 was not intermingled with Ames' work in Room 140 in any manner whatsoever; however, per the schedule change directive from Fluor, Ames' construction of the roof for Room 140 was now to occur *after the installation of the mechanical piping* (the "Revised Sequence"). A true and correct excerpt of Ames' project schedule relating to the contracted sequence for Ames' work for Room 140 (the "Contracted Sequence"), which shows a continuous, uninterrupted schedule that does not include installation of the mechanical piping as a predecessor activity, is attached as **Exhibit I**.

43. Under the Contracted Sequence, Ames had adequate access to install and remove the shoring required for the containment roof slab for Room 140 without encountering congestion and site constraints caused by the performance of other subcontractors' scopes of work.

44. In contrast, proceeding pursuant to the Revised Sequence inevitably required Ames to expend additional resources to, *inter alia*: (i) obtain an advanced engineered shoring design; (ii) install and remove the shoring system from around the existing mechanical piping; and (iii) install the advanced engineered shoring system in a small, congested work area.

45. In addition, the Revised Sequence and delayed commencement of Ames' Work for construction of the roof for Room 140 directly and adversely impacted other portions of Ames' Work.

46. Indeed, the unforeseeable delay of Ames' Work and deviation from the Contracted Sequence, amongst other things: (i) delayed Ames' completion of the Area "A" and Area "B" roofs; (ii) created conflicts with the containment roof in Area "C"; (iii) necessitated the utilization of additional manpower, cranes, concrete pump trucks, and other pieces of equipment; (iv) led to the stacking of crews and equipment in a small, constricted work area; (v) slowed down Ames'

construction work activities in general; and (vi) contributed to the severe loss of productivity and labor inefficiencies suffered by Ames during the course of the Project.

### C. Ames Provided Timely Notice to Fluor of Increased Costs and Delays Caused by the ADS Materials Change Directive

47. As soon as Ames became aware of potential cost and schedule impacts stemming from the ADS Materials Change Directive and Modification P00015, Ames promptly notified Fluor and furnished Fluor with Letter 0244, dated December 21, 2021. A true and correct copy of Letter 0244 is attached as **Exhibit J**.

48. Thereafter, in January of 2022, approximately 15 months after Fluor received RFP R00014 (in October of 2020), and after Ames issued Letter 0244 (in December of 2021), Fluor, *for the first time ever*, provided Ames with a copy of RFP R00014.

49. In response, and in accordance with the terms of the Subcontract, Ames submitted a contract modification request relating to Modification P00015 ("CMR 114"), and furnished Fluor with Letter 0275, dated March 22, 2022, which contains Ames' preliminary request for equitable adjustment ("REA") and incorporates by reference, and attachment, the requisite TIA and detailed cost information in support of the request (the "Preliminary ADS REA"). A true and correct copy of the Preliminary ADS REA is attached as **Exhibit K**.

50. Per the terms of the Subcontract, Ames' Preliminary ADS REA contains a detailed cost breakdown and TIA substantiating Ames' request for a *Two Million Eighty-Nine Thousand Three Hundred Ninety-One Dollar and Fifty-Six Cent* ($2,089,391.56) increase in the Subcontract price and 154-day extension to the Subcontract's completion date. *Id*.

51. After submitting CMR 114, Ames, as part of its good faith attempt to limit its damages, continued to expend considerable resources identifying, developing, and implementing

multiple mitigation strategies aimed at lessening the adverse impacts to Ames' Work attributable to Modification P00015.

52. Roughly 10 months after Ames provided Fluor with Ames' Preliminary ADS REA, on or about January 23, 2023, Ames furnished Fluor with Letter 0339, which details various adjustments to the Preliminary ADS REA and summarizes some of Ames' mitigation efforts and the resulting benefits (the "Revised ADS REA"). A true and correct copy of the Revised ADS REA is attached as **Exhibit L**.

53. The Revised ADS REA reflects Ames' revised request for a *Two Million Seventy-Three Thousand Two Hundred Two Dollar and Eight-One Cent* ($2,073,202.81) increase in the Subcontract price and no less than a 119-day extension to the Subcontract's completion date due to Modification P00015. *Id*.

54. Fluor has not paid any additional sums to Ames in connection with Modification P00015 and has steadfastly refused and neglected to address the cost and time impacts created by its own actions and inactions.

55. Ames continues to incur damages as a result of Fluor's actions and inactions.

56. All conditions precedent related to Ames' claims, and to the recovery of monetary damages and other relief sought herein, have been satisfied, waived, excused, or otherwise discharged.

**IV.
CLAIMS**

**Count One – Miller Act Payment Bond Claim**

57. Ames incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

58. The Payment Bond was furnished to the USACE for the protection of all persons supplying labor or material in carrying out the work on the Project. 40 U.S.C. § 3131(b)(2).

59. Under the terms of the Payment Bond, Fluor, as principal, and National, as surety, bound themselves, jointly and severally, in the penal sum of *One Hundred Forty-Five Million Seven Hundred Twenty Thousand Eight Hundred Forty Dollars and Two Cents* ($145,720,840.02), to promptly make payments to all persons having a direct relationship with Fluor or a Fluor subcontractor for furnishing labor or material for the prosecution of the work on the Project.

60. Ames has a direct relationship with Fluor or a Fluor subcontractor for furnishing labor or material for the prosecution of the work on the Project.

61. Ames furnished labor and material in the prosecution of the work on the Project.

62. Ames has not been paid in full for the labor and material it furnished in the prosecution of the work on the Project.

63. Ames is a proper claimant under the Payment Bond because Ames has a direct relationship with Fluor or a Fluor subcontractor for furnishing labor or material for the prosecution of the work on the Project.

64. More than ninety (90) day shave elapsed from the last day on which Ames furnished labor or material for which the claim is made.

65. It has been less than one year since Ames completed its Work.

66. Fluor has failed and refused, and still fails and refuses, to pay Ames the owed amount, which is in excess of *Two Million Seventy-Three Thousand Two Hundred Two Dollars and Eighty-One Cents* ($2,073,202.81).

67. Ames is entitled to judgment against National in an amount to be determined at trial, along with interest thereon, the costs and disbursements of this action, and for such other and further relief as this Court may deem just and proper.

**V.**
**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, the United States of America for the use and benefit of Ames Construction Inc. and Ames Construction Inc., respectfully request the following relief:

A. Judgment in Plaintiffs' favor and against Defendant, National Union Fire Insurance Company of Pittsburgh, PA, on all causes of action alleged herein;

B. For damages in an amount to be proven at trial;

C. For costs of suit incurred herein;

D. For pre- and post-judgment interest;

E. For such other and further relief as this Honorable Court may deem just, equitable and proper.

Respectfully submitted,

By: /s/ Michael Cowan
W.Y. Dist. Bar No. 8-6967
**BELTZER BANGERT & GUNNELL LLP**
5420 S. Quebec St., Suite 103
Greenwood Village, CO 80111
Phone: (720) 576-7225
mcowan@bbglaw.com

*Attorneys for Plaintiff Ames Construction, Inc.*